[Cite as *State v. Napier*, 2016-Ohio-2967.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2015-0044 |
| BRANDON NAPIER | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2015-0164 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 12, 2016 |
| APPEARANCES: | |

For Plaintiff-Appellee

D. MICHAEL HADDOX
Prosecuting Attorney
Muskingum County, Ohio

By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., PO Box 189
Zanesville, Ohio 43702-0189

For Defendant-Appellant

WILLIAM T.CRAMER
470 Olde Worthington Rd, Suite 200
Westerville, Ohio 43082

*Hoffman, J.*

{¶1} Defendant-appellant Brandon L. Napier appeals his conviction and sentence entered by the Muskingum County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On February 9, 2015, Appellant Brandon L. Napier met LeShanta Thompson at a bar. Thompson had been drinking during the evening. Appellant was accompanied by Rodryk Johnson and Raven Johnson. As they left the bar, Raven Johnson was driving a vehicle, and Rodryk Johnson was in the front passenger seat. Appellant and Thompson were in the rear seats.

{¶3} During the ride, Appellant mentioned Thompson's ex-girlfriend, sparking an argument. Appellant told Raven Johnson to pull the vehicle over, stating he was going to beat up Thompson. He and Thompson exited the vehicle.

{¶4} A physical altercation ensued between Appellant and Thompson. Rodryk Johnson also exited the vehicle, and punched Thompson in the temple, knocking Thompson and Appellant to the ground. Appellant punched Thompson with his fist, knocking his tooth out.

{¶5} Appellant was on top of Thompson while both were lying on the ground. Appellant reached for a brick and hit Thompson on the head with it, putting Thompson into a daze. Thompson testified he saw Appellant reach for the brick and hit him. Thompson also heard Appellant tell Rodryk Johnson to clean out Thompson's pockets.

{¶6} Malachi Knott, a neighbor, observed two men hitting a third male with a brick. He yelled at the two men, who then ran to their car. The witness testified the victim

was very distraught and kept repeating he was robbed. The witnessed later identified the assailant with the brick from video surveillance obtained from the bar "as the man with the blue hat." He described the assailant as approximately 5'8", wearing a hoodie, white t-shirt, dark pants, tennis shoes and blue hat. The video surveillance from the bar shows Rodryk wearing a black cap, black t-shirt, and light gray pants. Appellant was wearing a white cap, white t-shirt, dark jeans and tennis shoes.

{¶7} After Knott yelled, Rodryk Johnson and Appellant ran back to the car and left the scene.

{¶8} Appellant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1); one count of felonious assault, in violation of R.C. 2903.11(A)(1); one count of theft, in violation of R.C. 2913.02(A)(1); and one count of possessing criminal tools, in violation of R.C. 2923.24(A).

{¶9} The matter proceeded to a jury trial. During the course of trial, the State dismissed the charge of theft. The jury found Appellant guilty on the charges of aggravated robbery and felonious assault. The jury further found Appellant possessed the brick, but did not intend to use it to commit the felony. As a result, Appellant was found guilty of possessing criminal tools as a first degree misdemeanor.

{¶10} The trial court sentenced Appellant to ten years on the aggravated robbery charge, seven years as to the felonious assault charge, and six months on the first degree misdemeanor possessing criminal tools. The trial court ordered the terms to run concurrently for an aggregate term of ten years.

{¶11} Appellant assigns as error:

**{¶12}** "I. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE HIS CONVICTION FOR AGGRAVATED ROBBERY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶13}** "II. APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

**{¶14}** "III. THE TRIAL COURT VIOLATED PRINCIPLES OF DOUBLE JEOPARDY AND R.C. 2941.25 BY IMPOSING SENTENCES ON AGGRAVATED ROBBERY AND FELONIOUS ASSAULT BOTH OF WHICH AROSE FROM A SINGLE ACT."

I. and II.

**{¶15}** In the first and second assignments of error, Appellant maintains his conviction for aggravated robbery, in violation of R.C. 2911.01(A)(1), is not supported by the manifest weight and sufficiency of the evidence.

**{¶16}** The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶17}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* The weight of the evidence and the credibility to be given to the witnesses and their testimony is left to the trier of fact.

**{¶18}** Appellant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which reads,

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

**{¶19}** At trial herein, Thompson testified,

Q. What does that mean when you say that you're tusslin'?

A. It means that we trying to get a grip on each other. Means that I'm trying to get-- I'm trying to get him off of me.

So his friend [Rodryk Johnson] come along-- I ain't even seen him comin' -- him me in the temple. Me and Mr. Napier [Appellant] fell together on the ground.  So we still tusslin' on the ground, because I'm trying to get free, and I see him reachin' for the brick. So he had his finger out. I'm trying to bite his finger to get free. He put his finger back in. He grabbed the brick, he hit me, then hit me in the back. I wasn't knocked out but I was kinda dazed a little bit.

So he told his friend to go in my pockets. I ain't have nothing but, what, $108, or whatever. But I'm lookin' at it, if he was broke like that he could have just asked to borrow some money, a few dollars, I would have said yeah, here, here you go, don't worry about it. But he took that, whatever. Then the neighbors came out, said, hey, hey, hey, and they ran to the car.

Tr. at 128-129.

**{¶20}** Thompson testified he was tipsy, not drunk.  He testified he remembered all of the details of the altercation. Tr. at 144.

**{¶21}** On direct examination at trial, Raven Johnson testified as to Thompson yelling someone had hit him with a brick.  Tr. at 170. She further testified she saw Appellant hit Thompson with the brick.  Tr. at 172. She stated the neighboring home owner then came out, at which point Appellant and Rodryk Johnson ran back to the car. Tr. at 172.

**{¶22}** Malachi Knott, the neighboring homeowner who observed the altercation, testified at trial on the night in question he heard three individuals arguing outside his home.

Q. What happened next?

A. They walked through the side yard and I didn't' think nothing of it until I heard something hit my house and got curious and went to my mother's room, which is right here, and--

Q. When you said you heard something hit your house what was the nature of the sound?

A. Just a very large thud.

Q. Okay.

A. And curiosity [sic], went to my mom's room and I seen two males on the other one and proceeded to go outside. By that time they'd made it to the piece of my porch where it cuts in. And when I got outside they had him on the ground and were hitting him with a brick.

\*\*\*

A. When I came out there was one male standing right here and one right here, and he was back towards the corner of the house, and they were--

\*\*\*

A. And when I came out they were standing over him [Thompson] with a brick raised above his head and that was it until I yelled and--

Q. What'd you yell?

A. Get the hell out of my yard.

Q. Okay.

A. And they took off to a car that was sitting in my alley.***

Tr. at 189-190.

{¶23} Knott identified the individual with the brick as wearing clothing similar to clothing in a photograph obtained from surveillance video obtained from the bar earlier in the evening. He stated the individual was wearing a blue hat, was about 5'8" tall, wore a white t-shirt, jeans and tennis shoes.

{¶24} While Appellant was wearing a white baseball cap, he did match the height description and was wearing a white t-shirt, jeans and tennis shoes. Knott testified the victim was distraught and kept repeating he had been robbed. Tr. at 193.

{¶25} The evidence showed the victim and Appellant were engaged in a physical altercation. Appellant punched Thompson in the mouth, causing him to lose a tooth. While on the ground and on top of Thompson, Thompson testified Appellant reached for a brick and struck him on the head with the brick. This testimony was corroborated by Raven Johnson. Thompson was dazed, but not unconscious. He testified Appellant told Rodryk Johnson to get into Thompson's pockets, and they took his money. Knott testified Thompson kept repeating he had been robbed after the altercation. While the amount of money was disputed at trial, we find there was sufficient evidence presented for the jury to find beyond a reasonable doubt Appellant committed a theft offense after having struck Thompson with the brick.

{¶26} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of aggravated robbery

proven beyond a reasonable doubt, and reviewing the entire record, we find the jury did not lose its way or create a manifest miscarriage of justice.

**{¶27}** The first and second assignments of error are overruled.

III,

**{¶28}** In the third assignment of error, Appellant maintains the trial court erred in failing to merge the aggravated robbery and felonious assault counts in sentencing.

**{¶29}** Revised Code, Section 2941.25 reads,

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶30}** In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held,

Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. [*State v.*] *Blankenship,* 38 Ohio St.3d [116] at 119, 526 N.E.2d 816 [ (1988) ] (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic] ). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

{¶31} Recently, the Ohio Supreme Court in *State v. Ruff,* 2015-Ohio-995, 143 Ohio St.3d 114, addressed the issue of allied offenses, determining the analysis set forth in *Johnson* to be incomplete. The Court in *Ruff,* held,

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

> At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct,

and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶32}** We find Appellant caused separate identifiable harm in the commission of both the felonious assault offense and the offense of aggravated robbery. First, Appellant committed felonious assault when he struck Thompson in the mouth causing serious physical harm by knocking out Thompson's tooth. Thereafter, Appellant committed aggravated robbery, by using a deadly weapon while taking Thompson's money. We find separate harm resulted from each offense. Accordingly, we find the trial court did not error in convicting and sentencing Appellant on both the offense of felonious assault and the offense of aggravated robbery.

**{¶33}** The third assignment of error is overruled.

{¶34} Appellant's conviction and sentence in the Muskingum County Court of Common Pleas are affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur