[Cite as *State v. Johnson*, 2018-Ohio-1657.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-16-1282

    Appellee                                      Trial Court No. CR0201601889

v.

Jawaun Johnson aka Ja'Waun                **DECISION AND JUDGMENT**

    Appellant                                    Decided:  April 27, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

### Background

{¶ 1} This appeal concerns a juvenile offender, Jawaun Johnson, who was alleged

to be delinquent of aggravated robbery and felonious assault, each with accompanying

firearm specifications.  Jawaun appeared before the Lucas County Juvenile Court for a

probable cause hearing, and the juvenile court determined that it was required to transfer Jawaun's case to adult court pursuant to the mandatory bindover provisions of R.C. 2152.10(A)(2)(b), 2152.12(A)(1)(b)(ii) and 2152.02(BB)(1). The juvenile court transferred the case to the Lucas County Court of Common Pleas, General Division.

{¶ 2} Following a jury trial, Jawaun was found guilty as to both offenses and both firearm specifications, and the court sentenced him to serve eight years in prison. On appeal, Jawaun challenges (1) the constitutionality of the mandatory transfer statutes; (2) the manifest weight of the evidence at trial; and (3) the trial court's failure to merge his aggravated robbery and felonious assault convictions. For the reasons set forth herein, we affirm the judgment below.

## Facts and Procedural History

{¶ 3} This case concerns an aggravated robbery and felonious assault by Jawaun on March 8, 2016. On that date, "A.R.," (hereinafter "the victim"), then aged 19, drove his friend "A.K.," then 15, to meet Jawaun. The purpose in meeting was so that A.K. could show, and hopefully sell, a pair of "Jordan" sneakers to Jawaun. The victim did not know Jawaun before that evening.

{¶ 4} A.K. and Jawaun did know each other. They had met in the juvenile justice system about a year previous, and the two were "friends" on the social media website, Facebook. Earlier in the day, on March 8, 2016, A.K. sent a Facebook message to Jawaun, asking if Jawaun was interested in purchasing a size 10.5 pair of shoes for "$115

2.

obo," i.e., or best offer. Jawaun said that he was interested, although he did not think that the shoes would fit.

{¶ 5} The agreed-upon location was a Church's Fried Chicken restaurant on the corner of Bancroft and Upton Avenue in Toledo, Ohio. The victim and A.K. arrived at Church's sometime after 8:00 p.m. and waited in the car. Within a few minutes, Jawaun and a taller, unidentified male, emerged from the bushes bordering the parking lot and got into the backseat of the victim's car. Jawaun sat behind A.K., who was in the passenger seat, and the other person sat behind the victim, who was in the driver's seat.

{¶ 6} Jawaun inspected the shoes and said that they would not fit him but that he had a cousin who might be interested. He also said that he needed to "make change" and asked the victim to drive across the street (Upton) to a Family Dollar Store. The victim drove there, and Jawaun entered the store, twice, once by himself and then again with his friend. Video footage from Family Dollar was entered into evidence and shows Jawaun and his friend exiting the store. After returning to the car and reclaiming their same seats, Jawaun called someone on his cell phone, purportedly his cousin. He then asked the victim to drive to his cousin's house, which was close by, in the neighborhood behind the Family Dollar Store. The victim's car was captured by surveillance video exiting the parking lot at 8:13 p.m.

{¶ 7} The victim drove there, to Macomber Street, and parked the car. He testified, "[w]hen I parked my car, [Jawaun] got out of the car. While he was getting out, [A.K.] told him to put the shoes back until he got the money. And then * * * [Jawaun]

3.

and his friend got back in the car.  They both pulled out guns and they said, run it."
According to the victim and A.K., to "run it" means to "give up all your stuff."  A.K.
expressed disbelief and asked if this was "for real, bro?"  Jawaun responded, "shut up
before I bust this bitch."

{¶ 8} According to both witnesses, Jawaun pointed his gun at the victim, and the
other person pointed his gun at A.K.  Jawaun's gun was described as a revolver that was
smaller in size than the other weapon.  With Jawaun's gun pointed at the victim's head,
the victim "handed" over his IPhone and began to take off his shoes.  As he turned to
surrender his left sneaker to Jawaun, the victim "heard a gun go off right in [his] face."
The victim felt "really disoriented," and his hearing was impacted.  Jawaun and the other
person got out of the car, and the victim sped off.  The victim testified that he thought
"everything was okay" and didn't realize that he had been shot until A.K. told him.  The
victim then noticed "two holes in [his] arm and * * * blood everywhere."  The victim
drove himself and A.K. to the hospital, where they arrived at 8:24 p.m.  The victim
received care for two wounds, an entrance wound to his right bicep and an exit wound to
his right tricep.

{¶ 9} Toledo Police Officer Adam Eilerts was dispatched to the hospital and spoke
with the victim and A.K.  A.K. provided the officer with Jawaun's first name and a
nickname.  Eilerts then put that information into a law enforcement database and
identified Jawaun as a potential suspect.  Eilerts then contacted Detective Raynard
Cooper who works in the Investigative Services Bureau of the Toledo Police Department.

4.

Cooper also interviewed the victim and A.K. that night. According to Cooper, A.K. identified Jawaun as the shooter and offered his first and last name. Cooper showed a picture of Jawaun, and A.K. verified that it was, in fact, Jawaun.

{¶ 10} Officer Martin Rocha processed the victim's vehicle that night. Rocha found a "small caliber projectile," i.e., bullet, on the floor of the vehicle between the driver's seat and the console. Rocha also found, and photographed, a picture of the victim's left shoe, with what appears to be blood on it and an empty Jordan shoe box. Neither the Jordan sneakers nor the victim's IPhone were found.

{¶ 11} A warrant was issued for Jawaun's arrest. Officer Nora Mugler testified that, while attempting to arrest Jawaun at his home on March 11, 2016, he escaped out of a second story window and fled. The police were able to apprehend him on March 19, 2016.

{¶ 12} On March 9, 2016, the state filed complaints in delinquency against Jawaun in the Juvenile Division of the Lucas County Court of Common Pleas. The state alleged that Jawaun engaged in conduct that would be considered aggravated robbery and felonious assault, if committed by an adult. Each charge included a firearm specification. The state also moved the juvenile court to relinquish jurisdiction over D.M. and to transfer him to the adult court so that he could be tried as an adult.

{¶ 13} A hearing was held in juvenile court on April 21, 2016, attended by Jawaun, his mother, and Jawaun's counsel. Through counsel, Jawaun stipulated that he was 17 years old. The victim, A.R., and Detective Cooper all testified at the hearing. At

5.

its conclusion, the court found that there was probable cause to believe that Jawaun had engaged in the conduct alleged in the complaints. It recognized that it no longer had jurisdiction over the aggravated robbery offense and transferred it, pursuant to the mandatory bindover provisions of R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b). In light of the mandatory transfer of the aggravated robbery charge, it also transferred the felonious assault charge, pursuant to R.C. 2152.12(F).

{¶ 14} On May 12, 2016, the Lucas County Grand Jury indicted Jawaun of aggravated robbery, in violation of R.C. 2911.01(A)(1) (Count 1), which included a firearm specification, pursuant to R.C. 2941.145; and felonious assault, in violation of R.C. 2903.11(A)(2) and (D) (Count 2), which also included a firearm specification, pursuant to R.C. 2941.145.

{¶ 15} A three day trial began on September 19, 2016, at the conclusion of which the jury found Jawaun guilty as to both counts and both corresponding gun specifications. On October 24, 2016, after a presentence investigation, the trial court sentenced Jawaun to serve five years in prison as to Count 1 and five years as to Count 2, to be served concurrently. It "merged" the three year gun specifications with one another, for a total prison term of eight years.

{¶ 16} Through his appointed appellate counsel, Jawaun asserts three assignments of error for our review.

6.

Assignment of Error One:  Appellant's right to Due Process pursuant to the U.S. Constitution was violated when he was certified to stand trial as an adult without an amenability hearing.

Assignment of Error Two:  Appellant's convictions are against the manifest weight of the evidence.

Assignment of Error Three:  The trial court committed plain error by not merging the aggravated robbery conviction and the felonious assault convictions.

## Mandatory Transfer to the General Division

{¶ 17} R.C. 2151.23(A) grants juvenile courts with exclusive jurisdiction over children who are alleged to have engaged in conduct that would constitute a crime if committed by an adult.

{¶ 18} R.C. 2152.12, however, creates a "narrow exception to the general rule that juvenile courts have exclusive subject matter jurisdiction over any case involving a child." *State v. Wilson*, 73 Ohio St.3d 40, 42, 652 N.E.2d 196 (1995).  Under R.C. 2152.12, a juvenile court *must* transfer an offender to adult court for criminal prosecution if the "mandatory" transfer provisions apply, and *may* transfer an offender to adult court if the "discretionary" transfer provisions apply.

{¶ 19} Mandatory transfers are "special measures for extraordinary cases, involving older or violent [juvenile] offenders." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, __ N.E.3d __, ¶ 36 ("*Aalim II*"), citing *State v. Hanning*, 89 Ohio St.3d

7.

86, 89, 2000-Ohio-436, 728 N.E.2d 1059. "A juvenile who has committed a qualifying offense and who meets certain age requirements is automatically removed from the jurisdiction of the juvenile division and transferred to the adult court." *Id.* at ¶ 2. The mandatory transfer statutes are set forth in R.C. 2152.10(A) and 2152.12(A).

{¶ 20} If a child is not subject to mandatory transfer, the child may be eligible for discretionary transfer to the appropriate court for criminal prosecution if the child is charged with an act that would be a felony if committed by an adult and the juvenile court determines at a hearing that all of the following apply: (1) the child was fourteen years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged, and (3) the court determines that the child is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require the child to be subject to adult sanctions, after considering any relevant factors including but not limited to specific factors that are outlined by the statute. R.C. 2152.12(B), (D), and (E).

{¶ 21} In this case, after the state filed its initial charges in juvenile court, Jawaun was mandatorily bound over to adult court because he was 17 years old at the time of the alleged offenses, the juvenile court found that there was probable cause to believe that he had engaged in the alleged conduct, and he was accused of committing a qualifying offense (aggravated robbery) with a firearm. *See* R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b)(ii) and 2152.02(BB)(1). Accordingly, the juvenile court immediately

8.

transferred jurisdiction over Jawaun's case to adult court without considering whether Jawaun would be amenable to care or rehabilitation within the juvenile system.

{¶ 22} In his first assignment of error, Jawaun argues that his transfer to the general division, without an amenability hearing, violated his right to due process, as guaranteed by Article I, Section 16 of the Ohio Constitution. Jawaun concedes that this proposition—that mandatory transfer statutes are unconstitutional—was recently reconsidered, and rejected, by the Supreme Court of Ohio.

{¶ 23} That is, in *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, _ N.E. 3d _, ¶ 3 ("*Aalim I*"), the court found that the process of automatically transferring a juvenile, without a hearing, violated the juvenile's right to due process under Ohio law. In *Aalim II*, the court reversed itself, finding that its previous decision "usurped the General Assembly's exclusive constitutional authority to define the jurisdiction of the courts of common pleas by impermissibly allowing a juvenile-division judge discretion to veto the legislature's grant of jurisdiction to the general division of a court of common pleas over this limited class of juvenile offenders." *Id.* at ¶ 3. Jawaun concedes that *Aalim II* is dispositive here and that it compels this court to affirm the juvenile court's transfer of his case to the general division. Jawaun asserts that he raised the argument as an attempt to preserve the issue for further appellate review, in the event that *Aalim II* was appealed to, and reversed by, the United States Supreme Court. We note that no further appeal was taken in *Aalim II*, and in any event, we are bound by it. Jawaun's first

9.

assignment of error, challenging his mandatory transfer from the juvenile division to the general division, is not well-taken.

{¶ 24} In his second assignment of error, Jawaun argues that his conviction was against the manifest weight of the evidence.

{¶ 25} In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387. "'[I]t is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" *State v. Miller*, 6th Dist. Lucas No. L-08-1056, 2009-Ohio-2293, ¶ 21, quoting *State v. Brown*, 10th Dist. Franklin No. 02AP-11, 2002-Ohio-5345, ¶ 10.

{¶ 26} Jawaun's defense theory in this case is that A.K. accidentally shot the victim, which they "attempt[ed] to pin" on Jawaun. At trial, each witness denied that A.K. was the shooter and/or that he had a weapon that night.

10.

**{¶ 27}** Jawaun cites four instances of inconsistent testimony by A.K. and the victim to support his claim that neither witness was credible. First, Jawaun points to a treatment record from the hospital which states "[a]ccidental discharge from an unspecified firearms or gun, initial encounter." As noted by the state, the notation was unattributed to anyone and unverified. Moreover, it was contradicted by each person who testified at trial, i.e., that Jawaun was the shooter. It was also contradicted by a nurse's report, which indicates that the victim complained that he had been "set up * * * robbed * * * and shot in the arm."

**{¶ 28}** Second, Jawaun argues that A.K. and the victim's failure to call "911" and the victim's decision to go to St. Vincent's Medical Center, even though Toledo Hospital was closer, are suspicious. On cross-examination, the victim explained that he lives in a different part of town, was not familiar with the area, and did not know that another hospital was closer. By contrast, the victim did know where St. Vincent's was located because it was close to his high school.

**{¶ 29}** Third, Jawaun appears to dispute A.K.'s testimony that Jawaun "blocked" A.K. from accessing his Facebook page on the day of the shooting, only to allow A.K. to view it the next day, after Jawaun changed his Facebook name. Jawaun ponders, "[w]hy would a person change their Facebook name after a shooting, and then 'refriend' A.K. after the shooting?" Jawaun fails to explain the significance, or lack thereof, of A.K.'s testimony.

11.

{¶ 30} Finally, Jawaun points to communications between A.K. and Jawaun, after the shooting. According to the transcript, A.K. called Jawaun while in route to the hospital, demanding to know why Jawaun had shot the victim and Jawaun acted as though nothing had happened, asking "are you still going to come?" A.K. screamed at Jawaun and hung up on him. Later, at the hospital, their communications continued via test message. Jawaun wrote to A.K., "[s]hit, just bring me 'em tomorrow, little bro." A.K. answered, "[a]ll right. I got you," and Jawaun responded, "[g]ood looks." Jawaun argues that A.K.'s failure to share that text exchange with the police is evidence that "no attempted transaction * * * occurred." By contrast, the state suggests that A.K. may have felt the need to "go along" with Jawaun, to avoid retaliation.

{¶ 31} Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the fact finder's credibility determinations, given that it is the fact finder who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Here, the jury, as finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony. *State v. Caudill,* 6th Dist. Wood No. WD-07-009, 2008-Ohio-1557, ¶ 62, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Moreover, "[a] conviction is not against the manifest weight of the evidence merely because the jury believed the prosecution testimony."

12.

*State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds).

{¶ 32} Upon review of the entire record, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice. Having found that Jawaun's convictions are not against the manifest weight of the evidence, his second assignment of error is not well-taken.

{¶ 33} In his third assignment of error, Jawaun argues that his aggravated robbery and felonious assault convictions are allied offenses of similar import and the two convictions should have merged at the sentencing phase under R.C. 2941.25. Because Jawaun failed to raise the argument before the trial court, he has forfeited all but plain error.

{¶ 34} As a preliminary matter, we note that the trial court sentenced Jawaun to serve five years as to the aggravated robbery conviction and five years as to the felonious assault conviction, to be served concurrently to one another (but consecutively to the three-year term imposed for the firearm specifications). Jawaun's merger argument is not moot, even though the court ordered concurrent sentences. "[E]ven when the sentences are to be served concurrently, a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, "protects against three abuses:

13.

(1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). R.C. 2941.25 codifies the Double Jeopardy Clause's third protection, which prohibits multiple punishments for the same offense. The statute prohibits multiple convictions for "allied offenses of similar import" arising out of the same conduct. R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 35} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. This means that the "analysis may be sometimes difficult to perform and may result in varying results

14.

for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *Id.* at ¶ 32.

{¶ 36} In *Ruff*, the Supreme Court of Ohio announced that whenever a court considers whether there are allied offenses that merge into a single conviction, the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Id.* at ¶ 25. When considering this overarching question, the court must address three sub-questions: (1) Were the offenses "dissimilar in import," meaning did the offenses involve either separate victims or "separate and identifiable" harm? (2) Were the offenses committed separately? and (3) Were the offenses committed with separate animus? *Id.* at ¶ 23-25. "An affirmative answer to *any* of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." (Emphasis added.) *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12. The defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 37} We review de novo a trial court's ruling as to whether convictions merge under the allied-offenses doctrine. *State v. Corker*, 10th Dist. Franklin No. 13AP-264, 2013-Ohio-5446, ¶ 28, citing *State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, ¶ 47.

15.

**{¶ 38}** A defendant who fails to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error. *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. "Forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* A defendant must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus," and "absent that showing, the accused cannot demonstrate that the trial court committed plain error by failing to inquire whether the convictions merge for purposes of sentencing." *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶ 39}** Here, Jawaun was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1) ("No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;") and felonious assault, in violation of R.C. 2903.11(A)(2). ("No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon.")

16.

**{¶ 40}** In considering the first prong of the *Ruff* analysis, i.e., whether the convictions were of dissimilar import, we must determine whether the two offenses involved separate victims or "separate and identifiable" harm. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 23. Offenses are of dissimilar import when a defendant's conduct "victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted on multiple counts." *Ruff* at ¶ 26.

**{¶ 41}** Here, the indictment did not identify a victim with regard to the aggravated robbery offense. During closing arguments, however, the state argued, and the record supports the argument, that Jawaun committed an aggravated robbery as to both individuals because, while using a deadly weapon, he committed a theft offense as to each (the victim's IPhone and A.K.'s Jordan sneakers). Therefore, if the aggravated robbery conviction relates to the Jordan sneakers, then the offenses do not merge because there are separate victims: A.K. who sustained an aggravated robbery and the victim who was feloniously assaulted. *See, e.g., State v. Bankston,* 6th Dist. Ottawa No. OT-17-016, 2017-Ohio-9305, ¶ 23 (Where girlfriend's father was the felonious assault victim and girlfriend's mother was the attempted burglary victim, the harm to each is separate and identifiable). If, on the other hand, the aggravated robbery conviction relates to the victim's IPhone, then there was only one victim, but the two offenses do not merge because they caused separate and identifiable types of harm (i.e., by robbing and shooting the victim). *See, e.g., State v. Napier,* 5th Dist. Muskingum No. CT2015-0044,

17.

2016-Ohio-2967, ¶ 32 (Defendant caused separate and identifiable harm where he committed felonious assault by striking the victim in the mouth and knocking out a tooth and thereafter committed an aggravated robbery by using a deadly weapon to take the victim's money).

{¶ 42} Next, we consider the second and third prongs of the *Ruff* analysis— whether the offenses were committed separately or with a separate animus—together. In *State v. Woods*, 6th Dist. Lucas No. L-13-1181, 2014-Ohio-3960, we recognized:

> Separate conduct or separate animus may occur when a court determines the defendant at some point broke a temporal continuum started by his initial act. * * * Alternatively, a separate conduct or animus may exist when "facts appear in the record that distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed." (Internal citations omitted.) *Id.* at ¶ 35 quoting *State v. Nuh*, 10th Dist. Franklin No. 10AP-31, 2010-Ohio-4740, ¶ 16.

{¶ 43} In support of merging his convictions, Jawaun argues that the robbery and felonious assault "both happened essentially simultaneously" and therefore the latter was "in furtherance of the robbery."

{¶ 44} In this instance, we cannot say that the trial court erred in refusing to merge the offenses because the record contains evidence to establish that the crimes were committed with separate animus. Where a defendant uses greater force than necessary to

18.

complete aggravated robbery, he shows a separate animus. *State v. Sutton,* 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 62. Here, the aggravated robbery occurred when Jawaun demanded the victims' property ("run it") while brandishing a weapon, and it was completed before his felonious assault. *State v. Fields,* 12th Dist. Clermont No. CA2014-03-025, 2015-Ohio-1345, ¶ 18. After the victim "handed over" his IPhone and was in the process of surrendering his own sneakers, Jawaun shot him and committed the felonious assault. We find that the shooting was not necessary to complete the robbery at that point. Because the evidence established that Jawaun broke a "temporal continuum" that allow us to "distinguish the circumstances or draw a line of distinction" between the aggravated robbery and the felonious assault, the latter was not merely incidental to, or in furtherance of, the aggravated robbery.

{¶ 45} We conclude that Jawaun failed to demonstrate a reasonable probability that the aggravated robbery and felonious assault convictions would have merged. Accordingly, we find that Jawaun's third assignment of error is not well-taken.

**Conclusion**

{¶ 46} We find that (1) Jawaun's mandatory transfer to the general division was lawful and not violative of his due process rights; (2) Jawaun's convictions were not against the manifest weight of the evidence; and (3) the trial court did not commit plain error in not merging the aggravated robbery and felonious assault convictions. Therefore,

19.

we affirm the April 25, 2016 judgment of the Lucas County Court of Common Pleas, Juvenile Division, and the October 24, 2016 judgment of the General Division. Jawaun is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     _____
                JUDGE
Thomas J. Osowik, J.

              _____
Christine E. Mayle, P.J.       JUDGE
CONCUR.

              _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.