**[Cite as *State v. Washington*, 2021-Ohio-760.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1190

     Appellee                                 Trial Court No. CR0201901548

v.

Darius L. Washington                    **DECISION AND JUDGMENT**

     Appellant                                Decided:  March 12, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Drew E. Wood, Assistant Prosecuting Attorney, for appellee.

Sarah Haberland, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Darius Washington, appeals the August 8, 2019

judgment of the Lucas County Court of Common Pleas which, following a jury trial

convicting him of two counts each of rape, felonious assault, and kidnapping, with sexual

motivation specifications, sentenced him to a total of 28 years of imprisonment.  Because

we find that the trial court did not err in failing to merge the convictions at sentencing, we affirm.

{¶ 2} A jury trial on the charges commenced on July 16, 2019. A summary of the state's evidence presented relevant to each of the two victims is as follows. Victim, K.B., testified that she met appellant through mutual friends on Facebook. She had met with him face-to-face on two prior occasions and admitted to having sexual relations with him. In the early morning of June 25, 2018, K.B. was staying at a friend's house and was locked out. Responding to a message from appellant, K.B. indicated that she needed a place to stay and he agreed to send an Uber to pick her up and deliver her to his apartment. K.B. testified that she explicitly informed appellant that she did not intend on having sexual relations with him that night.

{¶ 3} After K.B.'s arrival the two shared some alcohol; appellant pulled out and loaded a shotgun and placed it next to his bed. After rebuffing appellant's sexual advances, K.B. attempted to leave; she got the kitchen door six inches open when appellant reached his arm around her neck pulling her back and strangling her until she passed out. K.B. testified that she woke up on the floor with appellant's arm around her neck dragging her back towards his bedroom.

{¶ 4} K.B. stated that she was in and out of consciousness. K.B. stated that she was on appellant's bed and was pinned under appellant on her stomach with her pants around her ankles. K.B. testified that appellant forcibly penetrated her anally and that it was very painful. She stated that she was also being penetrated orally and vaginally with

2.

various sex toys. K.B. stated she was crying and appellant asked her to perform oral sex. She complied. Eventually, with appellant's arm around her to keep her in bed, K.B. fell asleep for a few hours. Upon waking, appellant penetrated her vaginally and anally.

{¶ 5} Around noon, appellant ordered her an Uber; she purposely told him the wrong drop off point. Once in the Uber, she told the driver to take her to the hospital. K.B. stated that in the three to four days following the incident she could neither sit nor use the bathroom properly. K.B. state that she had never met or spoken with victim, T.E.

{¶ 6} K.B.'s testimony was corroborated by the treating sexual assault nurse examiner (SANE) who performed an examination of K.B. and collected samples for a rape kit. The SANE testified that K.B. was tearful and agitated at times.

{¶ 7} A forensic scientist at the Ohio Bureau of Criminal Investigation (BCI) received the rape kit samples and performed a DNA analysis of the samples. Relevantly, appellant was included as a contributor of DNA, specifically acid phosphatase which is found in semen and saliva, in K.B.'s anal swabs, underwear cutting, and skin swabs.

{¶ 8} As to victim, T.E, she testified that on August 17, 2018, at approximately 6:30-7:00 p.m., she met appellant for the first time at bus stop in downtown Toledo. After talking, the pair realized that they lived near each other and that appellant's brother had previously dated T.E.'s sister. Appellant asked T.E. to come to his home. T.E. stated that she agreed because she was angry at her child's father.

{¶ 9} After arriving at appellant's apartment, T.E. stated that she began helping him clean. T.E. then took a shower because it had been a "long day" and she wanted to

3.

clean up. T.E. stated that she put her bra and underwear back on and appellant gave her a shirt to wear. At that point appellant's friend had arrived and the three began drinking. T.E. testified that appellant pulled out a gun from between the couch cushions and retrieved one from the closet, he also had a third gun.

{¶ 10} T.E. testified that she was dizzy from the alcohol and went to lay on appellant's bed. She awoke to a sharp pain and appellant anally penetrating her. T.E. began screaming and fighting him off; appellant, who was laying on top of her reached around and began strangling her. T.E. stated that she lost consciousness. When she "woke up" appellant started strangling her again. T.E. testified that she thought she was going to die. T.E. stated that she then "threw" herself off the bed along with appellant; appellant's friend burst through the door to see what was happening. T.E. then grabbed her underwear and attempted to flee the room but appellant grabbed her arm to stop her. The friend told appellant to let her go and he did.

{¶ 11} T.E. shared the friend's Uber and they dropped her off at her mother's apartment. She banged in the door until she realized that her mother was at work. Eventually a Toledo Police officer, responding to a safety check, found T.E. who reported the rape. He then took her to the hospital. T.E. stated that following the attack she felt scared to be around people and attends a weekly rape survivors group and individual therapy.

{¶ 12} The SANE who examined T.E. testified that she observed bruising on each side of her neck consistent with strangulation. There was bruising around T.E.'s anus.

4.

The SANE performed a rape kit.  A second BCI forensic scientist testified regarding T.E.'s rape kit findings.  As to the anal samples, appellant was excluded from interpretable DNA.  A swab from the interior back of T.E.'s underwear testified positive for appellant's DNA.

{¶ 13} As to K.B., appellant was found guilty of Count 1, rape, Count 2, felonious assault, and Count 3, kidnapping.  Appellant was also found guilty of the sexual motivation specifications contained in Counts 2 and 3.  As to T.E., appellant was found guilty of Count 4, rape, Count 5, felonious assault, and Count 6, kidnapping.  Appellant was also found guilty of the sexual motivation specifications attached to Counts 5 and 6.

{¶ 14} The issue of whether the convictions should merge at sentencing was briefed by the parties.  At the August 1, 2019 sentencing hearing, the court first found the motion to merge not well-taken stating:

And specifically as it relates to the rape charges and the felonious assaults, I agree with the State's argument that there was separate animus and different harm caused sufficient enough to find that not well-taken.

I struggled with the kidnapping portions of both.  And for that reason, I think I still find the motion not well-taken, but I think the sentence will reflect my difficulty with the kidnapping portion of the conviction.

{¶ 15} Appellant was then sentenced to mandatory ten-year imprisonment terms as to both counts of rape, to be served consecutively.  Appellant was sentenced to four-year consecutive sentences on each felonious assault count to be served consecutively to the

5.

rape counts. As to kidnapping, appellant was sentenced to four years of imprisonment as to each count to be served concurrent to each felonious assault count. The aggregate total of all counts was 28 years of imprisonment. Appellant was also classified as a Tier III sex offender.

{¶ 16} The sentence was journalized on August 8, 2019. A nunc pro tunc order was filed on September 11, 2019, clarifying that the felonious assault counts were to be served consecutive to each other and consecutive to the rape counts. This appeal followed.

{¶ 17} Appellant now raises the following assignment of error for our review:[1]

1. The trial court erred in failing to merge Counts 2 and 3 with Count 1 and Counts 5 and 6 with Count 4.

{¶ 18} In his sole assignment of error appellant contends that the trial court erred when it refused to merge the counts of felonious assault and kidnapping with the respective rape counts. Appellant argues that the actions giving rise to the assault and kidnapping charges were "instrumental and committed in furtherance of the rape." Appellant claims this is further supported by the sexual motivation specifications attached to the counts.

---

[1]In his reply brief, appellant raises three additional assignment of error. Unlike App.R. 16(A), which permits assignments of error to be presented in appellant's merit brief, App.R. 16(C) does not permit new assignments of error to be presented in a reply brief and, therefore, appellant's reply brief is stricken. *State v. Williamson*, 6th Dist. Wood Nos. WD-18-049, WD-18-051, 2019-Ohio-4380, ¶ 70-71.

6.

{¶ 19} Conversely, the state argues that the two victims each suffered separate and distinct harm resulting from the three separate offenses.  The state contends that the sexual motivation specifications do not prevent the three crimes from being committed with a separate animus.

{¶ 20} In determining whether offenses are allied within the meaning of R.C. 2941.25, "courts must evaluate three separate factors- the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. The *Ruff* court further explained:

> Under R.C. 2941.25(B), a defendant whose conduct supports
>
> multiple offenses may be convicted of all the offenses if any one of the
>
> following is true: (1) the conduct constitutes offenses of dissimilar import,
>
> (2) the conduct shows that the offenses were committed separately, or (3)
>
> the conduct shows that the offenses were committed with separate animus.

*Id.* at paragraph three of the syllabus.

{¶ 21} This "'analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases.  But different results are permissible, given that the statute instructs courts to examine a defendant's conduct-an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnso*n, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52.  A defendant has the burden to establish that R.C. 2941.25 prohibits multiple punishments.  *State v. Johnson*, 6th Dist.

7.

Lucas No. L-16-1282, 2018-Ohio-1657, ¶ 37, citing *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 18. This court reviews the merger ruling de novo. *Id.* at ¶ 38.

{¶ 22} The offenses at issue are rape, R.C. 2907.02(A)(2), felonious assault, R.C. 2903.11(A)(1) and (D), and kidnapping, R.C. 2905.01(A)(4) and (C). A rape charge requires that the state prove that appellant engaged in sexual activity with another by the use of threat or force. Felonious assault requires that the appellant cause serious physical harm to another. Finally, kidnapping requires that appellant, by threat, force, or deception, knowingly removed another from the place she was found or restrained another of her liberty with the purpose to engage in sexual activity. We will addresses the nature of the charges as they relate to each victim.

### K.B.: Counts 1, 2, and 3

{¶ 23} As set forth above, the charges related to K.B. stem from the events of June 25, 2018. Reviewing the testimony, we find separate and identifiable harm as to each charge. As to rape, testimony was presented that appellant forcibly penetrated K.B. anally and vaginally and against her will; K.B. testified that appellant asked her if she had ever been raped before. Bruising in her cervix, consistent with a forced sexual encounter, was also documented.

{¶ 24} With respect to the felonious assault charge, K.B. testified that appellant strangled her to unconsciousness multiple times; injuries consistent with strangulation were documented by the SANE and the corresponding photographs were admitted into evidence.

8.

{¶ 25} As to kidnapping, K.B. testified that appellant prevented her from leaving his apartment by dragging her back to his bedroom. Further, appellant would not let K.B. leave the apartment until noon that day. *See State v. Harmon*, 9th Dist. Summit No. 2013-Ohio-1769, ¶ 25 (where the kidnapping occurred over an extended period of time it was not merely incidental to the felonious assault.) In addition, appellant had a loaded shotgun next to the bed as an implied threat of harm had K.B. attempted to leave. K.B. testified she did not know what appellant was capable of and only hoped she would get to go home.

{¶ 26} Because we find that the crimes were of dissimilar import, i.e., separate, identifiable harm was shown, we need not address the remaining two elements of *Ruff*. *State v. Tellis*, 6th Dist. Wood No. WD-19-050, 2020 -Ohio-6982, ¶ 81, citing *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12.

### T.E.: Counts 4, 5, and 6

{¶ 27} On August 17, 2018, the events, as detailed above, took place as to T.E. As to rape, T.E. awoke with appellant forcibly penetrating her anally. T.E. testified that it felt like a knife and that she screamed out in pain. Testimony and photographs were presented at trial depicting the bruising to her anus. T.E. further testified that as a result of the rape, she suffered psychological harm in that she is scared around people and attends individual and group therapy. We find that the state showed separate harm caused by the rape.

9.

{¶ 28} As to felonious assault, T.E. testified regarding multiple acts of strangulation. T.E. lost consciousness and suffered bruising; she testified that she thought she was going to die. The SANE confirmed that the injuries she observed were consistent with strangulation. We agree that separate harm was demonstrated to preclude merger.

{¶ 29} Finally, the offense of kidnapping was testified to as occurring when T.E., following the rape and assault, threw herself off of appellant's bed and attempted to run from the bedroom. Appellant's friend, who was still at the apartment, burst through the door. Appellant grabbed T.E.'s arm in an attempt to stop her from leaving. T.E. stated that the friend told appellant to let her go; he released her and T.E. ran from the room and ultimately the apartment. Further, these events unfolded with T.E.' knowledge that appellant had several guns in the apartment as he retrieved them in her presence.

{¶ 30} Reviewing the testimony relating to T.E. and the kidnapping charge, we additionally note that:

> Ohio law is clear that a conviction pursuant to R.C. 2905.01 does not turn on the manner in which an individual is restrained. Rather, it hinges on whether the restraint "is such as to place the victim in the offender's power and beyond immediate help, even though temporarily." *See State v. Pawlak*, 8th Dist. Cuyahoga No. 995552014-Ohio-2175, ¶ 60. The restraint "need not be actual confinement, but may be merely compelling the victim to stay where [s]he is." *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-

10.

5483, 899 N.E.2d 1021, ¶ 20 (8th Dist.), quoting *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 WL 1639621 (Nov. 2, 2000).

*State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 18

{¶ 31} Here, the act of grabbing T.E. by the arm demonstrated appellant's attempt to restrain T.E. and thwart her escape. Clearly, this was a separate act committed after the rape and felonious assault. Accordingly, the trial court did not err in its failure to merge the convictions relative to T.E.

{¶ 32} We further reject appellant's general contention that the sexual motivation specifications attached to the felonious assault and kidnapping counts as to both victims required merger at sentencing because the specifications negated a separate animus. Again, the *Ruff* analysis requires the court to analyze the offenses individually. Though predating *Ruff*, the Second Appellate District reviewed the rejected the merger argument where the charges of felonious assault and kidnapping contained sexual motivation specifications. *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311. The court noted that although sexual motivation can represent a single animus, it "does not necessarily require a conclusion that the felonious assault, rape, and kidnapping offenses for each victim must merge, because such a conclusion fails to consider whether the kidnappings, felonious assaults, and rapes were committed by the same conduct." *Id.* at ¶ 12.

{¶ 33} Here, looking at each offense individually, we find that the offenses were committed by separate conduct and conclude that the trial court did not err when it denied

11.

appellant's request to merge the counts at sentencing.  Appellant's assignment of error is not well-taken.

{¶ 34} On consideration whereof, we affirm the judgment of the Lucas County Court of Common Pleas.  Pursuant to App.R.24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____

                                                 JUDGE

Thomas J. Osowik, J.      

Christine E. Mayle, J.    _____
CONCUR.                                         JUDGE

_____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.