[Cite as *State v. Stevens*, 2021-Ohio-2643.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

EMMETT R. STEVENS,

        Defendant-Appellant.

CASE NO. 2020-P-0043

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00693

## O P I N I O N

Decided: August 2, 2021
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant*, 209 South Main Street, Eighth Floor, Suite 3, Akron, OH 44308 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Emmett R. Stevens ("Mr. Stevens"), appeals from the judgment entry of the Portage County Court of Common Pleas sentencing him to an aggregate prison sentence of 70 to 75 years following a bench trial in which he was found guilty of six counts of rape, three counts of kidnapping, aggravated burglary, aggravated robbery, felonious assault, and tampering with evidence.

{¶2} Mr. Stevens asserts five assignments of error, contending that (1) the trial court erred by denying his pretrial motion for new counsel; (2) the trial court erred in

denying his Crim.R. 29 motion for acquittal because the state failed to produce sufficient evidence to sustain his convictions for felonious assault, aggravated robbery, and aggravated burglary; (3) his convictions for felonious assault, aggravated burglary, and aggravated robbery are against the manifest weight of the evidence; (4) the trial court erred by failing to merge, for purposes of sentencing, (a) the kidnapping, aggravated burglary, and aggravated robbery offenses with the rape offenses, and (b) the felonious assault offense with the rape offenses and with the kidnapping offense; and (5) the trial court erred by imposing consecutive sentences.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court did not abuse its discretion in denying Mr. Stevens' requests to discharge his appointed counsel because the record does not demonstrate a total breakdown in the attorney-client relationship between Mr. Stevens and his counsel.

{¶5} (2) The state presented sufficient evidence, if believed, to prove the offenses of aggravated burglary, aggravated robbery, and felonious assault beyond a reasonable doubt.

{¶6} (3) Mr. Stevens has not demonstrated that the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to the offenses of aggravated burglary, aggravated robbery, and felonious assault.

{¶7} (4) Based on the facts underlying Mr. Stevens' conduct, the trial court did not err by failing to merge (a) the kidnapping, aggravated burglary, or aggravated robbery offenses with the rape offenses, or (b) the felonious assault offense with the rape offenses or with the kidnapping offense.

{¶8} (5) Mr. Stevens has not clearly and convincingly established that his

2

consecutive sentences are unsupported by the record or contrary to law.

{¶9}  Thus, we affirm the judgment of the Portage County Court of Common Pleas.

## Substantive and Procedural History

{¶10}  This case involves Mr. Stevens' breaking into a woman's home in the early morning hours, assaulting and raping her in her bedroom, stealing her bedsheet, and attempting to destroy evidence.

### *The Offenses*

{¶11}  On July 20, 2019, the victim in this case, who we will refer to as Jane Doe ("Ms. Doe"), returned to her home in Kent, Ohio, at about 11 p.m.  At around midnight, she set her alarm for work in the morning and went to bed.

{¶12}  She awoke in the middle of the night and noticed there was a person in her bedroom standing over her bed, who the state alleges was Mr. Stevens.  She screamed, jumped out of bed, pushed Mr. Stevens, and tried to run for the door.  Mr. Stevens grabbed her, and they began struggling.  During the struggle, she ripped his shirt and pulled something off his neck that she thought was a necklace.

{¶13}  Mr. Stevens wrapped his arm around Ms. Doe's neck from behind and put her in a choke hold.  He kept pulling his arm tighter, and she started to lose her breath. He repeatedly asked her if she wanted him to "choke [her] out."  Although she could hardly breathe, Ms. Doe eventually responded, "No, please don't."  Mr. Stevens loosened his grip, got Ms. Doe on the floor, and smashed her head onto the carpet.  He pinned her down with his knee on her back, pried open her mouth, and forced her to perform fellatio, telling her that he would stab her if she bit him.

3

{¶14} Mr. Stevens rubbed Ms. Doe's buttocks and stated he wanted to have anal sex. He demanded lotion and reached for it on the dresser. Ms. Doe attempted to stand up and run, but Mr. Stevens grabbed her by the back of the hair, pulled her back onto the floor, and got on top of her. He put his fingers in her anal and vaginal openings and then put his penis in her anal opening. He next threw her face down on the bed, where he attempted anal intercourse and performed vaginal intercourse.

{¶15} Mr. Stevens turned Ms. Doe over on the bed, pinned her down, and again forced her to perform fellatio. Ms. Doe quickly turned her head, and Mr. Stevens ejaculated on the side of her face.

{¶16} Ms. Doe's alarm clock went off. Mr. Stevens turned off the alarm, pushed Ms. Doe back on the bed, and began pushing her pillow on her face. She begged him not to kill her. He told her not to move and he would not kill her. Mr. Stevens grabbed the comforter and threw it over top of Ms. Doe. He got dressed, yanked the bedsheet out from under her, and left the room. When Ms. Doe thought he had left the house, she grabbed her cell phone, locked herself in the bathroom, and called 911.

### Investigation

{¶17} Several officers from the Kent Police Department responded to the call, parked nearby, and proceeded to the house on foot. Ms. Doe approached the officers visibly distraught. She was crying, shaking, and hyperventilating; her face was red; and she was walking hunched over. She told the officers that an unknown man entered her home in the middle of the night, climbed on top of her, and was strangling her. She provided a general description of the man but did not know his identity. She also indicated

that the man may have taken the bedsheets and that she had torn a necklace off of him. Ms. Doe was transported to the hospital by ambulance.

{¶18} The police secured the house, and Patrolman Dominic Poe, with his canine partner, Iron, conducted a track. Iron led officers to the backyard of a nearby residence located on an adjacent street. Police dispatch notified the officers that Mr. Stevens was a known associate of the residence. Officers were familiar with Mr. Stevens from previous interactions and knew that he matched Ms. Doe's general description of her assailant.

{¶19} Patrolman Drake Oldham ("Ptlm. Oldham") saw Mr. Stevens come to the back door of the residence talking on a phone. A short time later, William Stevens ("William"), who is the owner of the house and Mr. Stevens' father, came to the door and spoke with Ptlm. Oldham. Mr. Stevens eventually exited the house, and Officer Michael Carnahan ("Officer Carnahan") placed him in handcuffs for detention.

{¶20} William told the officers that Mr. Stevens did not live there. Another family member stated that Mr. Stevens was not present at the house the day before but had arrived at about 7 a.m. that morning.

{¶21} William also told the officers that Mr. Stevens had put something in the washing machine located in the basement. William had turned the washing machine off because there was a problem with drainage. With William's consent, the officers searched the washing machine and discovered a sheet. William indicated he did not know who it belonged to, so the officers collected it as evidence.

{¶22} Meanwhile, Mr. Stevens became agitated while handcuffed outside, so Officer Carnahan walked him to the cruiser, read him his *Miranda* rights, and asked him what was going on. Mr. Stevens stated that the night before, he got off work at 8 pm;

5

went to a festival in Ravenna; played pool in downtown Kent; and went to EuroGyro. During the night, he was drinking Johnny Walker whiskey and Labatt Blue. He arrived at his father's home at 6 a.m. because he wanted to see his kids.

{¶23} While speaking to Mr. Stevens, Officer Carnahan noticed an odor of alcoholic beverage from his breath, that his face was swollen, and that he had a cut on the left side of his nose. Mr. Stevens stated that he sustained his injuries from falling off a ladder at work.

{¶24} Mr. Stevens' agitation escalated, so Officer Carnahan placed him in the back of his cruiser. Eventually, the police decided to arrest Mr. Stevens and transport him to the police station. Prior to transport, the officers had Mr. Stevens exit the cruiser to fix his handcuffs. At this time, officers noticed Mr. Stevens had a reddish cord in his hand, which the police collected as evidence. At the police station, officers placed Mr. Stevens in a holding cell and eventually collected his clothing and a DNA sample.

{¶25} At the police station, the officers unraveled the sheet obtained from the washing machine and discovered a torn t-shirt. They observed burn marks on both items. Ms. Doe later identified the sheet from the washing machine as the sheet that was taken from her bed and indicated it did not previously have burn marks on it. She also identified the shirt as being the one her assailant was wearing.

{¶26} Detective David Marino ("Det. Marino") went to Ms. Doe's home to investigate the crime scene. Upon arrival, an officer gave him pink earbuds that were taken from Mr. Stevens' hand prior to his transport to the police station. One of the earbuds was broken, and the other earbud was missing the soft rubber portion. Det. Marino subsequently found both the broken-off earbud and the rubber portion on the floor

6

of Ms. Doe's bedroom. He also observed new damage to the doorways leading from the outside to the garage and from the garage into the house, which indicated forced entry.

{¶27} While the police were investigating, Ms. Doe was taken to the hospital. Amanda Shields ("Nurse Shields"), a sexual assault nurse examiner ("SANE"), conducted a physical examination, documented and photographed Ms. Doe's injuries, and collected swabs for a sexual assault kit.

{¶28} Ms. Doe's injuries included abrasions on her cheek, elbow, mons pubis, vaginal area, and rectum; an abrasion and injury on her right hand; bruising on her left hand, left forearm, and right flank; bruising and discoloration on her left lower lip; redness on the sclera of her left eye, which is known as petechiae; redness on her upper eyelid; and discoloration to her jaw. She also reported pain to her jaw, throat, and neck.

{¶29} According to Nurse Shields, her physical findings were consistent with assault and the circumstances Ms. Doe reported. In addition, the petechiae to Ms. Doe's eye and the pain Ms. Doe reported to her throat, jaw, and neck were consistent with strangulation.

{¶30} Detective Karen Travis ("Det. Travis") met with Ms. Doe during the course of her physical examination and took photos of injuries that she could readily observe. According to Det. Travis and based on her experience, the physical injuries she observed on Ms. Doe were consistent with Ms. Doe's allegations of physical assault.

{¶31} Ms. Doe did not require any stiches or have any broken bones or fractures and was able to leave the hospital on the same day. Ms. Doe suffered anal tearing from which she experienced pain in the days following the assault. She was also given a CT scan as a result of neck pain, which did not show any fractures of her vertebra.

7

{¶32} When Ms. Doe later reviewed the police report and saw William's address, she realized that about two years prior, her youngest son was acquainted with William's son, Mr. Stevens. She recalled that Mr. Stevens and her son would sometimes smoke cigarettes outside her house.

{¶33} According to William, he visited Mr. Stevens in jail, and Mr. Stevens admitted during their conversation that he raped Ms. Doe.

### *DNA Testing*

{¶34} A forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI") performed DNA testing on items submitted by the Kent police. She found no foreign DNA on the vaginal samples; a mixture of DNA on the anal samples, which were not sufficient for comparison; and mixtures of DNA from samples taken from Ms. Doe's forehead and neck that were consistent with Ms. Doe and Mr. Stevens.

{¶35} A second forensic scientist at BCI conducted further testing on the vaginal and anal samples for the presence of male DNA. She found a single male DNA profile on both samples consistent with Mr. Stevens.

### *Indictment and Pretrial Matters*

{¶36} The Portage County Grand Jury indicted Mr. Stevens on the following 13 felony counts: six counts of rape, first-degree felonies, in violation of R.C. 2907.02(A)(2) (counts 1 through 6); three counts of kidnapping, first-degree felonies, in violation of R.C. 2905.01 (counts 7 through 9); aggravated burglary, a first-degree felony, in violation of R.C. 2911.11 (count 10); aggravated robbery, a first-degree felony, in violation of R.C. 2911.01 (count 11); felonious assault, a second-degree felony, in violation of R.C.

8

2903.11 (count 12); and tampering with evidence, a third-degree felony, in violation of R.C. 2921.12 (count 13).

{¶37} Mr. Stevens appeared at his arraignment with counsel and pleaded not guilty to the charges. The trial court appointed the public defender to represent Mr. Stevens.

{¶38} Shortly thereafter, the trial court appointed Attorney Job Perry to represent Mr. Stevens and granted the public defender's motion to withdraw.

{¶39} Following a bond hearing, the trial court issued a judgment entry granting Mr. Stevens' pro se motion to remove counsel and represent himself and appointed Attorney Anthony Koukoutas as advisory counsel.

{¶40} Following a status hearing, the trial court issued a judgment entry appointing Attorney Koukoutas as counsel of record and scheduling the matter for a jury trial. The trial court also subsequently appointed co-counsel for Mr. Stevens.

{¶41} The parties appeared for a motion hearing held on the Friday before the beginning of the jury trial on Tuesday. The hearing transcript reflects that Mr. Stevens attempted to discharge Attorney Koukoutas as his counsel. He became belligerent and disruptive and was removed from the courtroom. Attorney Koukoutas stated for the record the efforts he had made on Mr. Stevens' behalf, including filing several pretrial motions and meeting with Mr. Stevens on numerous occasions. The trial court denied Mr. Stevens' request to remove Attorney Koukoutas as counsel.

9

## *Trial*

{¶42} The matter proceeded to trial on the scheduled date. Mr. Stevens again attempted to discharge Attorney Koukoutas as counsel, which the trial court denied. Mr. Stevens again became belligerent and disruptive and was removed from the courtroom.

{¶43} Following voir dire and the selection of a jury, Mr. Stevens waived his right to a trial by jury, and the matter proceeded to a bench trial.

{¶44} The state presented testimony from the 911 dispatcher, the treating hospital's records custodian, the investigating police officers, Nurse Shields, Mr. Stevens' father, the forensic scientists from BCI, and Ms. Doe. The state also submitted numerous exhibits, including photographs of Ms. Doe's injuries.

{¶45} Following the state's presentation of its case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29, which the trial court denied.

{¶46} Mr. Stevens testified in his own defense. After describing his various activities that evening and early morning, he testified that he had planned to go to his father's house to see his kids. However, he "had a thought to pop in and see [his] friend's mom," who was Ms. Doe.

{¶47} According to Mr. Stevens, he knocked on Ms. Doe's front door, and she answered. They eventually went upstairs, and she consensually performed fellatio on him. At one point, Ms. Doe asked him what he and her son do when they are sitting in the garage or the driveway. He told her that they smoke pot and occasionally use cocaine. Ms. Doe became verbally aggressive, told him to leave, and stated she was going to tell the police that he raped her. He replied that he would tell the police that her son deals drugs out of her home. He grabbed the sheet because he had ejaculated on

10

it, and she grabbed his t-shirt and ripped it. He exited the residence out the front door, locked it behind him, and went to his father's house. He denied grabbing or assaulting Ms. Doe. At his father's house, he attempted to burn the sheet and the t-shirt with a lighter but eventually put them in the washing machine.

{¶48} On cross-examination, Mr. Stevens admitted to engaging in consensual fellatio and cunnilingus but denied any other sexual activity. He also denied that the officers removed anything from his hands or that the earbuds were his.

{¶49} Following Mr. Stevens' testimony, the defense rested and renewed its motion for acquittal pursuant to Crim.R. 29, which the trial court denied.

{¶50} Following closing arguments, the trial court indicated it would deliberate on the evidence and scheduled a subsequent hearing for the announcement of its verdict.

### *Verdict and Sentencing*

{¶51} At the subsequent hearing, the trial court found Mr. Stevens guilty of all 13 counts. The trial court made further findings with respect to the three kidnapping offenses (counts 7 through 9) that the victim was not released in a safe place unharmed.

{¶52} The matter proceeded immediately to sentencing. No presentence investigation was conducted. The trial court determined that the three kidnapping offenses (counts 7 through 9) merged for purposes of sentencing, and the state elected to proceed on count 9.

{¶53} The trial court heard argument from counsel regarding the merger of the remaining counts. The state requested that the trial court treat the remaining counts as multiple offenses and impose separate sentences. The defense requested that the trial court merge the six rape offenses with each other and merge the kidnapping offense with

11

the rape offenses. The defense stated that it believed the other charges involved one course of conduct but that it would let the court decide whether merger was appropriate.

{¶54} The trial court determined that the remaining counts did not merge and imposed the following sentences: 10 to 15 years in prison for each of the rape offenses (counts 1 through 6) and for each of the offenses of kidnapping (count 9), aggravated burglary (count 10), and aggravated robbery (count 11); 8 to 12 years in prison for felonious assault (count 12); and 36 months in prison for tampering with evidence (count 13). The trial court ordered the sentences in counts 1 through 6 and 10 to run consecutive to each other and the sentences in counts 9, 11, 12, and 13 to run concurrent, for an aggregate prison sentence of 70 to 75 years.

{¶55} Mr. Stevens appealed and presents the following five assignments of error for our review:

{¶56} "[1.] The trial court erred as a matter of law in imposing separate sentences for the allied offenses in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Sections [sic] 10 of the Ohio Constitution.

{¶57} "[2.] The trial court erred as a matter of law in imposing consecutive sentences upon appellant in violation of the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Sections [sic] 10 of the Ohio Constitution.

{¶58} "[3.] Appellant's convictions are against the manifest weight of the evidence possession [sic] in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

12

Case No. 2020-P-0043

{¶59} "[4.] The trial court erred as a matter of law in denying Stevens' Crim.R. 29 motion because the state failed to establish on the record sufficient evidence to support the charges levied against Bussle [sic] in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶60} "[5.] The trial court erred as a matter of law in denying Stevens' motion for new counsel prior to trial in violation of his right to effective assistance of counsel guaranteed under the Sixth Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution."

{¶61} We review Mr. Stevens' assignments of error out of order for ease of discussion.

### Motion for New Counsel

{¶62} In his fifth assignment of error, Mr. Stevens contends that the trial court erred by denying his motion for new counsel.

{¶63} A trial court's decision denying a request for new counsel is reviewed under an abuse-of-discretion standard. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999); *State v. Burrell*, 11th Dist. Lake No. 2013-L-024, 2014-Ohio-1356, ¶ 21. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶64} The Supreme Court of Ohio has determined that an indigent criminal defendant does not have a constitutional right to choose his court-appointed attorney; rather, he is only entitled to competent legal representation. *See State v. Murphy*, 91

13

Ohio St.3d 516, 523 (2001); *Cowans* at 72. "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶65} The existence of hostility or a personal conflict between the attorney and the defendant does not constitute a total breakdown so long as it does not inhibit the attorney from both preparing and presenting a competent defense. *State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 35 (11th Dist.). In addition, disagreements between the attorney and client over trial tactics or approach do not warrant a substitution of counsel. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 150.

{¶66} Mr. Stevens attempted to discharge his appointed counsel on two separate occasions: the first at a motion hearing held on the Friday before the beginning of the jury trial on Tuesday, and the second on the day of trial. According to Mr. Stevens, the "dialogue" between Mr. Stevens and the trial court demonstrates that the relationship between him and counsel "was irreparable and a complete breakdown." We disagree.

{¶67} At the motion hearing, Mr. Stevens alleged that his counsel was "inefficient" and "ineffective" because counsel had not reviewed the evidence with him or filed the pretrial motions he requested. Mr. Stevens became disruptive and belligerent and was removed from the courtroom. The trial court had counsel state for the record the numerous pretrial motions he had filed on Mr. Stevens' behalf and the time he had spent reviewing discovery material with Mr. Stevens and declined to remove him as counsel.

{¶68} On the day of trial, Mr. Stevens alleged that his counsel did not have his clothes for trial and had not shown him all of the evidence. He further noted that "only a

14

few of [counsel's] motions have been granted." The trial court referenced counsel's efforts on his behalf and determined that Mr. Stevens' request was a "delay tactic." Mr. Stevens again became disruptive and belligerent and was removed from the courtroom.

{¶69} Thus, the record does not demonstrate a total breakdown in the attorney-client relationship between Mr. Stevens and his counsel. Rather, it appears Mr. Stevens raised allegations regarding counsel's competence, which the trial court found lacked any factual basis. Further, while Mr. Stevens' courtroom outbursts exhibited great hostility, it appeared to be directed toward the trial court and its rulings. Mr. Stevens does not assert that his counsel was prevented from preparing and presenting a competent defense at trial.

{¶70} Accordingly, the trial court did not abuse its discretion by denying Mr. Stevens' requests to discharge his appointed counsel.

{¶71} Mr. Stevens' fifth assignment of error is without merit.

### Sufficiency of the Evidence

{¶72} In his fourth assignment of error, Mr. Stevens contends that the trial court erred by denying his Crim.R. 29 motion for acquittal because the state failed to produce sufficient evidence to support his convictions for felonious assault, aggravated robbery, and aggravated burglary.

### *Standard of Review*

{¶73} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus,

15

when a defendant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶74} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

{¶75} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶76} When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 386-387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

Case No. 2020-P-0043

{¶77} Mr. Stevens contends that the state failed to present "any evidence" of "serious physical harm" to establish the offenses of aggravated burglary, aggravated robbery, and felonious assault. He further contends that the state failed to present sufficient evidence of aggravated robbery because any harm to Ms. Doe occurred prior to Mr. Stevens' alleged theft of the bed sheet. We consider each of these three offenses in turn.

### Aggravated Burglary

{¶78} Mr. Stevens was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides, in relevant part, that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender, *inflicts, or attempts or threatens to* inflict *physical harm* on another * * *." (Emphasis added.)

{¶79} Thus, the aggravated burglary statute requires "physical harm," not "serious physical harm." R.C. 2901.01(A)(4) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(4). Mr. Stevens does not dispute that the evidence establishes that he inflicted, attempted to inflict, and/or threatened to inflict "physical harm" on Ms. Doe. Therefore, this portion of Mr. Stevens' argument is without merit.

17

### Aggravated Robbery

{¶80} Mr. Stevens was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3), which provides, in relevant part, that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * *[i]nflict, or attempt to inflict, serious physical harm* on another." (Emphasis added.)

{¶81} The Supreme Court of Ohio has held that the infliction or attempted infliction of serious physical harm under R.C. 2911.01(A)(3) does not require proof of a mental state. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 53. However, the indictment alleged that Mr. Stevens acted recklessly. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶82} In addition, R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following:

{¶83} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶84} "(b) Any physical harm that carries a substantial risk of death;

{¶85} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

18

{¶86} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶87} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶88} In this case, the alleged "theft offense" for purposes of the aggravated robbery statute was Mr. Stevens' taking of Ms. Doe's bed sheet. Specifically, Ms. Doe testified that shortly before taking the bed sheet, Mr. Stevens pushed her pillow over her face. She thought he was trying to kill her, and she begged him not to do so. Mr. Stevens told her not to move and he would not kill her, and she complied. The pillow remained on her face, but Mr. Stevens was not holding it. He then threw the comforter on top of her, got dressed, yanked her sheet off the bed, and left the residence.

{¶89} Mr. Stevens' arguments are premised on a lack of evidence establishing *actual* "serious physical harm" to Ms. Doe. According to the Supreme Court of Ohio, however, "the facts need only demonstrate *an [a]ttempt* to inflict any one of the results described in" R.C. 2901.01(A)(5)(a) through (e). (Emphasis added.) *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). Courts have determined that suffocation constitutes "serious physical harm." *See State v. O'Neal*, 5th Dist. Muskingum No. 08-CA-42, 2009-Ohio-5290, ¶ 36 ("We find that holding a pillow over a victim's face in an attempt to suffocate him amounts to an attempt to cause serious physical harm").

{¶90} Further, in interpreting the similar statutory language in R.C. 2911.02, i.e., the robbery statute, the Supreme Court of Ohio held that "[t]he statute plainly does not require that 'the force attendant to the theft offense be inflicted in furtherance of a purpose to deprive another of property.'" *State v. Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106,

19

832 N.E.2d 1190, ¶ 13, quoting the first certified question. Thus, based on *Thomas*, the aggravated robbery statute does not require evidence that Mr. Stevens attempted to inflict serious physical harm in furtherance of the theft offense. Rather, the evidence must establish that he attempted to inflict serious physical harm *during the commission of* the theft offense.

{¶91} Viewing Ms. Doe's testimony in a light most favorable to the prosecution, the trier of fact could have reasonably determined that Mr. Stevens recklessly attempted to inflict "serious physical harm" on Ms. Doe by pushing the pillow on her face and that he did so as part of his commission of the theft offense.

### *Felonious Assault*

{¶92} Mr. Stevens was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides, in relevant part, that "[n]o person shall knowingly * * * *[c]ause serious physical harm* to another * * *." (Emphasis added.)

{¶93} Mr. Stevens argues that while the allegations in this case are serious, the "vast majority" of Ms. Doe's injuries involved "bruising and abrasions."

{¶94} However, the medical evidence documented petechiae on Ms. Doe's eye, injuries and discoloration to her face, and pain to her throat, jaw, and neck. Nurse Shields testified that these injuries were consistent with Ms. Doe's report of being strangled. Courts have found sufficient evidence of "serious physical harm" under R.C. 2901.01(A)(5) where the victim's injuries were consistent with strangulation. *See, e.g., State v. Stillman*, 5th Dist. Delaware No. 04CAA07052, 2004-Ohio-6974, ¶ 22-28; *State v. Smith*, 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524, ¶ 26-27; *State v.*

20

*Simmons*, 8th Dist. Cuyahoga No. 96208, 2011-Ohio-6074, ¶ 34-39; *State v. McCoy*, 3d Dist. Marion No. 9-18-23, 2020-Ohio-4511, ¶ 78-81.

{¶95} In addition, Mr. Stevens' argument does not acknowledge Ms. Doe's following trial testimony, which the state elicited during her direct examination:

{¶96} "[THE STATE]: In terms of your private areas, your vaginal area, your pubic region, your anus, all of those areas, what if any pain or discomfort or injury do you recall in the days following that assault, with specific regard to those areas?

{¶97} "[MS. DOE]: I had suffered some anal tearing.

{¶98} "[THE STATE]: And I don't mean to belittle this or -- was that painful?

{¶99} "[MS. DOE]: Yes."

{¶100} When viewing this testimony in a light most favorable to the prosecution, the trier of fact could have reasonably determined that Mr. Stevens caused "physical harm" to Ms. Doe that involved "acute pain of such duration as to result in substantial suffering" pursuant to R.C. 2901.01(A)(5)(e); "any degree of prolonged or intractable pain" pursuant to R.C. 2901.01(A)(5)(e); and/or "some temporary, serious disfigurement" pursuant to R.C. 2901.01(A)(5)(d).

{¶101} In sum, the state presented sufficient evidence, if believed, to prove the offenses of aggravated burglary, and aggravated robbery, and felonious assault beyond a reasonable doubt.

{¶102} Mr. Stevens' fourth assignment of error is without merit.

Case No. 2020-P-0043

## Manifest Weight of the Evidence

{¶103} In his third assignment of error, Mr. Stevens contends that his convictions for aggravated burglary, aggravated robbery, and felonious assault are against the manifest weight of the evidence.

### *Standard of Review*

{¶104} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins, supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶105} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

22

### *Serious Physical Harm*

{¶106} Mr. Stevens first argues that the state failed to prove the element of "serious physical harm" for aggravated burglary, aggravated robbery, and felonious assault. However, Mr. Stevens' argument is based on the sufficiency of the evidence rather than its persuasiveness.

{¶107} As demonstrated above, the state was not required to prove "serious physical harm" for the aggravated burglary offense, only Mr. Stevens' infliction, attempt to inflict, or threat to inflict "physical harm" on Ms. Doe. The evidence establishes that Ms. Doe suffered at least "physical harm" and threats of "physical harm," and Mr. Stevens does not contend otherwise.

{¶108} In addition, the state was not required to prove *actual* "serious physical harm" for the aggravated robbery offense, only that Mr. Stevens *attempted* to inflict "serious physical harm" during the commission of a theft offense. Mr. Stevens does not acknowledge, much less dispute, Ms. Doe's testimony that he pushed a pillow over her face just prior to stealing her sheet.

{¶109} With respect to felonious assault, physical injuries indicative of strangulation constitute sufficient evidence of "serious physical harm." Further, Mr. Stevens does not acknowledge, much less dispute, Ms. Doe's testimony that she suffered anal tearing from which she experienced pain in the days following the alleged offenses.

{¶110} Accordingly, Mr. Stevens has not demonstrated that the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to this issue.

Case No. 2020-P-0043

### *Witness Credibility*

{¶111} Mr. Stevens next points to his own testimony at trial where he denied the allegations against him; claimed that any sexual conduct was consensual; and posited that Ms. Doe's claims were retaliatory for him telling her that her son was dealing and used drugs.

{¶112} Our ability to weigh the evidence and consider the credibility of witnesses is limited, since we must be mindful that the trier of fact was in the best position to evaluate the demeanor and credibility of witnesses and determine the weight to be accorded to the evidence. *State v. Galloway*, 10th Dist. Franklin No. 03AP-407, 2004-Ohio-557, ¶ 29; *see State v. DeHaas*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶113} However, Ms. Doe's testimony is wholly consistent with the evidence presented at trial, including that she never identified Mr. Stevens as her attacker; her documented physical injuries; the damage to the doors in her residence; the earbuds found in Mr. Stevens' hands; the portions of the earbuds found in Ms. Doe's bedroom; the DNA testing results; and Mr. Stevens' alleged jailhouse confession to his father. By contrast, Mr. Stevens' account disregards or contradicts much of this evidence.

{¶114} Mr. Stevens contends that his version of events is bolstered by Officer Carnahan's testimony on cross-examination, where he stated that Ms. Doe's house was "put together and there was [sic] no obvious signs of a struggle."

{¶115} During redirect examination, however, Officer Carnahan reviewed the photos taken of Ms. Doe's bedroom and testified that the comforter was "balled up and thrown on" the bed. Further, Ms. Doe did not allege in her testimony that Mr. Stevens

24

displaced or destroyed personal property during the alleged attack. Thus, Officer Carnahan's testimony was entirely consistent with Ms. Doe's testimony, where she stated that Mr. Stevens threw the comforter over top of her prior to removing and stealing her bedsheet.

{¶116} Accordingly, Mr. Stevens has not demonstrated that the trier of fact clearly lost its way or created a manifest miscarriage of justice in assessing the credibility of the witnesses.

{¶117} Mr. Stevens' third assignment of error is without merit.

**Merger**

{¶118} In his first assignment of error, Mr. Stevens contends that the trial court erred as a matter of law in imposing separate sentences for allied offenses of similar import.

### *Standard of Review*

{¶119} We review de novo a trial court's determination regarding merger. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

### *R.C. 2941.25*

{¶120} The constitutional prohibition against double jeopardy generally protects a criminal defendant from successive prosecutions and multiple punishments for the same crime. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 7. In furtherance of this constitutional principle, R.C. 2941.25 provides as follows:

{¶121} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

25

{¶122} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶123} In its most-recent extended analysis of R.C. 2941.25, the Supreme Court of Ohio held as follows:

{¶124} "1.   In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors–the conduct, the animus, and the import.

{¶125} "2.   Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶126} "3.   Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true:  (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, paragraphs one through three of the syllabus.

{¶127} The *Ruff* court further summarized its holding in the following manner:

{¶128} "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses:   (1) Were the

26

offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 31.

### Merger of Kidnapping and Rape

{¶129} Mr. Stevens first contends that the kidnapping offense should have merged with the rape offenses.

{¶130} Mr. Stevens was convicted of six counts of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely *compels the other person to submit by force or threat of force*." (Emphasis added.) These convictions involved six separate acts of forcible "sexual conduct" pursuant to R.C. 2907.01(A): vaginal intercourse (count 1); anal intercourse (count 2); insertion of finger in vaginal opening (count 3); insertion of finger in anal opening; (count 4); and fellatio (counts 5 and 6).

{¶131} Mr. Stevens was also convicted of three counts of kidnapping (counts 7 through 9). The trial court determined that the three kidnapping offenses merged with each other for purposes of sentencing, and the state elected to proceed on count 9.

{¶132} Under count 9, Mr. Stevens was convicted of kidnapping in violation of R.C. 2905.01(A)(4), which states, in relevant part, that "[n]o person, *by force*, threat, or deception, * * * shall remove another person from the place where the other person is found or *restrain the liberty* of the other person, *for any of the following purposes: * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will * * *.*" (Emphasis added.)

27

{¶133} At sentencing, the trial court found that the kidnapping offense (count 9) involved Mr. Stevens forcefully keeping Ms. Doe in the room when she attempted to escape.

{¶134} The Supreme Court of Ohio has stated that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). However, not every kidnapping offense that accompanies a rape offense is implicit therein. *State v. Roberts*, 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393, ¶ 11.

{¶135} Mr. Stevens relies on the Supreme Court of Ohio's decision in *Logan*, where the court provided guidelines for determining "whether kidnapping and another offense of the same or similar kind are committed with a *separate animus* as to each pursuant to R.C. 2941.25(B)." (Emphasis added.) *Id.* at syllabus. The term "animus," requires a court "to examine the defendant's mental state" and means "purpose or, more properly, immediate motive." *Logan* at 131.

{¶136} The *Logan* court held that "where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists *no separate animus* sufficient to sustain separate convictions." (Emphasis added.) *Id.* at syllabus. However, a separate animus for kidnapping exists where (1) "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," or (2) "the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime." *Id.*

{¶137} Although *Logan* predates *Ruff,* Ohio courts continue to apply the *Logan* guidelines in relation to the third prong of the *Ruff* test. *See State v. Grate*, Slip Opinion No. 2020-Ohio-5584, ¶ 108.

{¶138} It appears that Mr. Stevens necessarily committed the kidnapping offense and the rape offenses with the same animus, since kidnapping in violation of R.C. 2905.01(A)(4) requires a sexual purpose. However, the evidence indicates that Mr. Stevens committed the offenses separately pursuant the second prong of the *Ruff* test.

{¶139} Prior to the first forcible rape, Ms. Doe jumped out of bed, pushed Mr. Stevens, and tried to run for the door. Mr. Stevens grabbed Ms. Doe, and they began struggling. Mr. Stevens then put her in a choke hold, got her on the ground, and smashed her head onto the carpet. He then pinned her down and engaged in the first act of sexual conduct.

{¶140} When Mr. Stevens reach for lotion on the dresser, Ms. Doe attempted to stand up and run. Mr. Stevens grabbed her by the back of the hair and pulled her back onto the floor. He got on top of her and engaged in the second, third, and fourth acts of sexual conduct. He subsequently pinned her down on the bed and engaged in the fifth and sixth acts of sexual conduct.

{¶141} Thus, Mr. Stevens committed acts constituting kidnapping separately from the acts constituting forcible rape. *See State v. Jones*, 2017-Ohio-1168, 87 N.E.3d 900, ¶ 36 (10th Dist.) (defendant's blocking of the victim's attempt to leave a basement constituted the separate crime of kidnapping before the rape occurred); *State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 19 (defendant's recapture of the victim after an attempted escape was not merely incidental to the subsequent rape).

29

{¶142} There was also separate and identifiable harm under the first prong of the *Ruff* test. Ms. Doe suffered bruises and abrasions as a result of Mr. Stevens' physical restraint. Courts have held that similar uses of force constitute harm separate from the force involved in raping a victim. *See*, *e.g.*, *Jones* at ¶ 36 (victim suffered blows to the head rendering her unconscious); *State v. Worth*, 10th Dist. Franklin No. 10AP-1125, 2012-Ohio-666, ¶ 81 (victim knocked to the floor, held down, and repeatedly struck in the face); *State v. Menton*, 7th Dist. Mahoning No. 07 MA 70, 2009-Ohio-4640, ¶ 132 (victim restrained by hitting, biting, choking, and suffocating).

{¶143} Accordingly, the kidnapping offense does not merge with the rape offenses.

### Merger of Aggravated Burglary and Rape

{¶144} Second, Mr. Stevens contends that the aggravated burglary offense should have merged with the rape offenses.

{¶145} As indicated, aggravated burglary requires (1) trespass in an occupied structure by force, stealth, or deception; (2) purpose to commit any criminal offense; and (3) the infliction, attempted infliction, or threatened infliction of physical harm. *See* R.C. 2911.11(A)(1). Mr. Stevens' arguments are based on the third element.

{¶146} Mr. Stevens contends that the trial court "specifically found when rendering its verdict that the harm that resulted from the rape was the same harm that escalated the burglary to aggravated burglary." The transcript pages cited by Mr. Stevens do not contain any such finding.

{¶147} Mr. Stevens also contends that the facts of this case are akin to *Ruff*, *supra*, where, following remand, the First District determined that the harm resulting from the defendant's aggravated burglary and rape offenses was not separate and identifiable.

30

*See State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367, ¶ 23 ("*Ruff II*").

{¶148} We find *Ruff* to be factually distinguishable. In that case, the state relied on the defendant's rape offenses, i.e., the *actual* infliction of physical harm, to establish the third element of the aggravated burglaries. *See Ruff II* at ¶ 21. In other words, the rape offenses constituted the aggravating elements to transform burglary into aggravated burglary. *See id*. at ¶ 14, ¶ 22. In addition, the state erroneously contended during the sentencing hearing that the aggravated burglaries were committed and completed upon the defendant's entrance into the victim's house. *See id*. at ¶ 14.

{¶149} Here, in finding Mr. Stevens guilty of aggravated burglary, the trial court found that he "inflicted or attempted to inflict or threatened to inflict physical harm" on Ms. Doe. The evidence indicates that Mr. Stevens pried open Ms. Doe's mouth and forced her to perform fellatio, thereby committing forcible rape. He also told her that he would stab her if she bit him, which constitutes a threat to inflict physical harm and satisfies the third element of aggravated burglary. Thus, Mr. Stevens committed the acts constituting aggravated burglary separately from the acts constituting forcible rape. *See State v. Bryant*, 10th Dist. Franklin No. 14AP-333, 2014-Ohio-5306, ¶ 32 (finding a defendant's threats to kill the victim to be separate acts from forcible fellatio).

{¶150} Accordingly, the aggravated burglary offense does not merge with the rape offenses.

### *Merger of Aggravated Robbery and Rape*

{¶151} Third, Mr. Stevens contends that the aggravated robbery offense should have merged with the rape offenses.

Case No. 2020-P-0043

{¶152} As indicated, aggravated robbery requires (1) infliction or attempted infliction of serious physical harm (2) in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. *See* R.C. 2911.01(A)(3).

{¶153} Mr. Stevens contends that the harm from the aggravated robbery was not separate and identifiable from the rape. As demonstrated above, however, the evidence supports a finding that Mr. Stevens recklessly attempted to inflict "serious physical harm" on Ms. Doe by trying to suffocate her during the commission of the theft offense. This act was separate from Mr. Stevens' acts of forcible rape and resulted in a separate risk of harm. In addition, Mr. Stevens necessarily had a separate animus, as his purpose pursuant to the aggravated robbery statute was to commit a theft offense, not to engage in sexual activity.

{¶154} Accordingly, aggravated robbery offense does not merge with the rape offenses.

### Merger of Felonious Assault, Kidnapping, and Rape

{¶155} Finally, Mr. Stevens contends that the felonious assault offense should have merged with the kidnapping offense and with the rape offenses.

{¶156} As indicated, felonious assault involves knowingly causing serious physical harm. *See* R.C. 2903.11(A)(1).

{¶157} Mr. Stevens contends that the felonious assault was "incidental" to these offenses because it was "conducted at the same time" and "with the same animus" and resulted in the "same harm." While it appears that Mr. Stevens acted with the same animus, which was to engage in sexual activity with Ms. Doe, we disagree that the felonious assault was conducted at the same time and resulted in the same harm.

32

{¶158} The trial court found Mr. Stevens guilty of felonious assault but did not specify the qualifying acts or the "serious physical harm." The record supports findings that Mr. Stevens knowingly caused "serious physical harm" to Ms. Doe through strangulation, which resulted in petechiae on Ms. Doe's eye and other injuries, and/or through penetration of her anal opening, which resulted in painful anal tearing.

{¶159} With respect to kidnapping, the trial court found that Mr. Stevens' offense involved forcefully keeping Ms. Doe in the room when she attempted to escape. Thus, Mr. Stevens' restraint of Ms. Doe that formed the basis of the kidnapping offense encompassed separate acts from his strangling and anal penetration of Ms. Doe. *See State v. Harmon*, 9th Dist. Summit No. 26502, 2013-Ohio-1769, ¶ 23 (finding separate acts where the restraint was not limited to strangling the victim).

{¶160} With respect to rape, Mr. Stevens' convictions related to six separate acts of forcible "sexual conduct," including two instances of anal penetration. While the strangulation was committed for the purpose of facilitating the first forcible rape, it occurred prior to and separately from it. *See State v. Washington*, 6th Dist. Lucas No. L-19-1190, 2021-Ohio-760, ¶ 32 (finding the defendant's act of strangulation to be separate from rape); *Lovato, supra,* at ¶ 22 (finding defendant's act of punching the victim to be separate from rape).

{¶161} In addition, the strangulation resulted in "serious physical harm" separate and identifiable from that caused by the forcible rapes, including from the two instances of anal penetration. *See State v. Mpanurwa*, 2017-Ohio-8911, 102 N.E.3d 66, ¶ 19 (2d Dist.) (finding a broken arm/wrist to be separate and distinct harm from the tears,

33

lacerations and bruising to the vaginal area caused by the act of intercourse underlying the rape offense).

{¶162} Accordingly, the felonious assault offense does not merge with the kidnapping offense or with the rape offenses.

{¶163} Mr. Stevens' first assignment of error is without merit.

**Consecutive Sentences**

{¶164} Finally, in his second assignment of error, Mr. Stevens contends that the trial court erred by imposing consecutive sentences.

*Standard of Review*

{¶165} The standard of review for the imposition of consecutive sentences is governed by the clearly and convincingly standard set forth in R.C. 2953.08(G)(2). *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16. Specifically, an appellate court "may increase, reduce or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds either * * * [t]hat the record does not support the sentencing court's findings under * * * (C)(4) of section 2929.14" or "[t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b).

*Statutory Findings*

{¶166} Ohio law imposes a statutory presumption in favor of concurrent sentences. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16; R.C. 2929.41(A) ("Except as provided in * * * division (C) of section 2929.14, * * * a prison term, * * * or sentence of imprisonment shall be served concurrently with any other prison term, * * * or sentence of imprisonment imposed by a court of this state * * *").

Case No. 2020-P-0043

{¶167} Pursuant to R.C. 2929.14(C)(4), a trial court may order multiple prison terms for convictions of multiple offenses to be served consecutively if the court finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *."

{¶168} The trial court must also find that one of the following statutory factors applies:

{¶169} "(a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶170} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶171} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C)(4)(a)-(c).

{¶172} The Supreme Court of Ohio has held that "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing

Case No. 2020-P-0043

entry * * *." *Bonnell* at ¶ 37. Otherwise, the imposition of consecutive sentences is contrary to law. *See id.*

{¶173} The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* In addition, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

### *Analysis*

{¶174} The record indicates that the trial court made the required statutory findings under R.C. 2929.14(C)(4) and additional statutory findings under 2929.14(C)(4)(a) and (b) at the sentencing entry and incorporated those findings into the sentencing entry.

{¶175} Mr. Stevens acknowledges that the trial court recited the required statutory language but contends that "the imposition of consecutive sentences is not supported by clear and convincing evidence in the record."

{¶176} This is not our required standard of review. As the Eighth District has aptly noted, the "clear and convincing standard" used in R.C. 2953.08(G)(2) is written in the negative. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.). It does not say that the trial court must have clear and convincing evidence to support its findings. *Id.* Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the trial court's findings. *Id.* In other words, the restriction is on the appellate court, not the trial court. *Id.*

{¶177} Mr. Stevens contends that the trial court should have also considered other factors. He states that he had no prior serious offenses; the trial court had limited knowledge of his criminal history; and there was no pre-sentence investigation or "psychosexual evaluation" to ascertain his likelihood of recidivism.

{¶178} The trial court made a statutory finding pursuant to R.C. 2929.14(C)(4)(a) that Mr. Stevens committed the offenses while participating in the intervention in lieu of conviction program for a prior and unrelated fifth-degree felony. The trial court did not, and was not required to, make a statutory finding pursuant to R.C. 2929.14(C)(4)(c), which relates to an offender's "criminal history" and "future crime."

{¶179} Mr. Stevens also acknowledges that the underlying facts are "awful" but states that there was "no serious or permanent injury that required a hospital stay or operation" and that his conduct "was not the worst form of the offense."

{¶180} The trial court made a statutory finding pursuant to R.C. 2929.14(C)(4)(b) indicating that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct" and that "the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." Thus, the statute does not require the trial court to determine that the great or unusual harm resulted in serious or permanent physical injury or that the offender's serious conduct was the worst form of the offense.

{¶181} Finally, Mr. Stevens states that the trial court's sentence is "effectively a life sentence without the possibility of parole."

{¶182} While Mr. Stevens' aggregate prison sentence is certainly severe, it is attributable, at least in part, to the sheer number of serious felony offenses he committed. *See State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 16 (noting this distinction). Mr. Stevens has not established that the trial court failed to comply with its statutory obligations under R.C. 2929.14(C)(4) in imposing consecutive sentences.

{¶183} Further, while consecutive sentences are reviewed for compliance with R.C. 2929.14(C)(4), individual felony sentences are reviewed under R.C. 2929.11 and R.C. 2929.12. *See Gwynne, supra,* at ¶ 17-18. Mr. Stevens has not asserted on appeal, much less established, that any of his individual sentences are disproportionate to their respective offenses pursuant to these statutes.

{¶184} In sum, Mr. Stevens has not clearly and convincingly established that his consecutive sentences are not supported by the record or are contrary to law.

{¶185} Mr. Stevens' second assignment of error is without merit.

{¶186} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

Case No. 2020-P-0043